Kinsale Insurance Company v. Venetian Hills Apartments. We'll give you time. Mr. Hacker, we'll begin whenever you're ready. Good morning, your honors, and may it please the court. John Hacker for Appellant Kinsale. Venetian acquired a surplus lines insurance policy, which provides insurance for a narrow set of risks at an exceedingly low premium. The policy has two coverage exclusions relevant here. I'd like to focus on the failure to maintain exclusion this morning, which broadly excludes coverage for claims in any way related to the warranty of habitability. To capture all of the ways that warranty is characterized in different jurisdictions around the country, the failure to maintain exclusion. Can we talk? We're here on a duty to defend case, right? I mean, I know the complaints of DEC action. It's a duty to defend and a duty to indemnify, right? But the court only ruled on the duty to defend. That's correct. The insurance company has a duty to defend. That's correct. The duty to indemnify was dismissed. Okay. The exclusion here is worded very broadly, identifying essentially all of the possible elements used in statutes and the common law to define the duty to maintain safe and sanitary premises. The exclusion thus, to that end, bars coverage for suits in any way related to any, quote, failure to maintain premises in a safe, sanitary, healthy, habitable and tentable condition. As used here, your honors, and means and. It joins the elements into a single integrated condition encompassing all elements that might be included in the warranty of habitability so that, and this is the critical point, so that a claim alleging breach of any one condition alleges a failure of this integrated single defined condition and triggers the exclusion. Which makes sense, your honors, because no law requires a landlord to maintain premises in, for example, a safe or sanitary manner so that the landlord escapes liability so long as the premises are one or the other. Because the duty to maintain is essentially always conjunctive and breached when any one element is missing. So is the mirroring exclusion for claims alleging failure to satisfy that conjunctive duty here. I think that you're likely right about ultimately what the best interpretation of that exclusion is. But the hangup that I'm having is that the duty to defend in Georgia is very broad. And I think it goes beyond the duty to indemnify. And so the question I've been wrestling with is how much ambiguity do you need? I don't think we're in a kind of statutory interpretation zone where you just figure out for the duty to defend what the absolute best reading of the policy is and go from there. But, you know, how, where is that line? I know Georgia, again, Georgia's duty to defend is very broad and you're supposed to read exclusions narrowly. So how do we get there? A couple of points if I may. The first is that, yes, the duty to defend is broader. But that doesn't mean you interpret the policy more broadly. The reason the duty to defend is broader than the duty to indemnify is that it encompasses situations in which there might not be a duty to indemnify. Because at the end of the case what's established might be, for example, intentional conduct. So a complaint alleges an intentional tort and negligence. You have a duty to defend that even though ultimately at the end of the case, you know, it might be proved to be intentional conduct. So there's no duty to indemnify. You nevertheless had to defend. That's the sense in which it's broader. But under Georgia law it says like I think this is St. Paul or the Penn case where the claim is one of potential coverage. Doubt as to liability and the insurer's duty to defend should be resolved in favor of the insured. So if the claim comes potentially within the policy, then any doubt goes to the duty to defend. And the policy in question does have the exception for smoke and fire. Well, it has the exclusion for any claim alleging a breach of the duty to maintain, right? Yes, but there is arguable coverage for purposes of the fire that happened. Oh, I'm sorry. So that's right. There may be coverage on the covering side of it. But we have to look at the complaint though, right? But also the policy, right? So if the complaint falls within the square terms of an exclusion, then there's no duty to defend. Right, but the complaint alleges in essence a negligence claim. A negligence? Yes. Negligent supervision, a negligent failure to maintain. That's right. But the policy excludes a claim for failure to maintain. I understand that. But the way I read Georgia law, and that's why I'm asking you this question, is if there's an arguable claim that it's made in the policy, the duty to defend in Georgia is very, very broad and therefore it's covered. So not covered, but you have a duty to defend. Right. And that's different than your duty to indemnify. I understand the conclusion, but the premise, I think, with respect, Your Honor, is incorrect in that you don't stop just by looking at the claim and then the insuring agreement. You look at the claim and determine whether or not there's a potential for coverage under the entire policy. And that includes an exclusion. So you're exactly right that the claim here is a negligent failure to maintain premises, to maintain them in a safe manner. And the policy explicitly says – I also read negligent supervision also. But the allegation here is that it's based on the failure to maintain safe premises by not having smoke detectors. And so when the policy explicitly excludes any suit coverage for – It says defendants fail to supervise, hire, train, and retain its employees. But the basis for liability, what they allege here, what they're seeking to establish, is entirely based on – of the smoke detectors. And that's connected to a failure to train employees to have adequate smoke detectors. So it's all in any way related to the failure to maintain safe premises. I don't think they're going to deny that. Their argument is not, Your Honor, that we don't read exclusions when we're applying the duty to defend. Their argument, like the court below's argument, is that by saying safe, sanitary, healthy, habitable, and tentable, it only applies to a claim that alleges a violation of a law that simultaneously requires all of those elements because of the conjunctive word and. And that is just categorically a misreading of the English language that's used in the exclusion. So you think that we give the exclusion the same level of review and interpretation on the duty to defend as we do on the duty to indemnify? I mean, there's a – don't dispute the principle that exclusions are construed narrowly. But that doesn't mean you construe them against their plain meaning, right? You interpret an exclusion according to what it says. But I think the way Georgia law works is that it has to be – when an insurer grants coverage to an insurer, any exclusions from that coverage must be defined clearly and distinctly. Right. And so if there's any kind of ambiguity or there's two different interpretations, then it has to be a strict construction in terms of how you apply it for purposes of a duty to defend. And again, a duty to indemnify is a very different animal than a duty to defend. And that's why I asked specifically, we're at a duty to defend case. Right. I'm not disputing any of those premises. The point here is there aren't two reasonable interpretations. If the other interpretation was reasonable in the context of how it's used and what the policy is trying to accomplish, then the ambiguity at the end of that analysis that this court conducted in, for example, Waddles, you go through just normal contract analysis. And if at the end of that analysis the policyholder's interpretation is a reasonable one, then that's the one you adopt. The problem here is it's not reasonable because it unambiguously says any claim for failure – that's in any way related to a failure to maintain premises with those five conditions is excluded. That's just the rule. Would this be a shorthand for what you say the case is? The lawsuit is you fail to maintain safe premises because you didn't have smoke detectors. And your client's response is, well, there's an exclusion in this policy for failure to maintain safe premises. So that is the answer. And then they say, well, no, in order for the exclusion to apply, it has to be safe – failure to maintain safe and habitable and all the other things. And you say, well, no, that's not what that means. Is that the very bottom line of the case? I mean, I think it's the bottom line of the – if I understand you rightly. They're misreading the exclusion and the district court misread the exclusion to say something like some other policies might, that it excludes claims for violation of any law that requires premises to be safe and sanitary, for example. If it read that way and it used the word and, then you'd be talking about laws that required all of those things at the same time. And that's why some of the other Kinsale policies that are constructed that way, they use the word or because it would make more sense to say violation of any law requiring the premises to be maintained in a safe or sanitary, et cetera, manner. But the structure of this language here says, again, with zero ambiguity, this is the plainest of meaning that the exclusion applies, excludes any claim in any way related to a failure to maintain premises in, for shorthand, a safe and sanitary condition. And so when a claim asserts that the landlord did not maintain the premises – But you read it that way, but I read it in a different way. So I have a different interpretation of how you're interpreting the exclusion, because you read it as only containing the language safe as opposed to safe, sanitary, healthy, habitable, and tenable condition. No, I'm not reading it with respect as only saying safe. I'm saying safe, sanitary. The condition has to be all of those things. And if you breach one of them, if it's not safe, then it's not in that condition. It has to be safe, sanitary, tenable, healthy, and habitable. And if it's not safe, then you haven't fulfilled your duty. Right, but you're assuming that it only has to meet one condition. I understand that, but I'm not – I think, with respect, I'm not assuming that. It says that the exclusion applies for a claim alleging a failure to maintain in any of those five – right? Right, but it uses – I understand your thing, but you're reading it as and meaning or. That's so important. I am absolutely not reading it as and means or. And means and. The condition – the premises have to be maintained in a condition that has all five elements at once, all of them. And if any one of them is missing, then the exclusion is not – the exclusion is triggered because the condition is not satisfied now. So I absolutely read and to mean and. Now, it is true, Your Honor, that in certain circumstances, and and or can be – can mean the same thing. For example, if I say I am free on June 14th and 15th, that means the same thing as I am free on June 14th or 15th. Right? They're just – in that structure, they mean the same thing. If one could use or here, that's fine. But I'm not reading and to mean or. And is the more natural word to use here because the laws that it's invoking, that it's dealing with, showing a breach of, they're all conjunctive too. And they're usually just safe and sanitary, for example. So the law says you have a duty to maintain – Right. So it does seem that a construction in favor of the insured would recognize that sometimes there are properties that might be safe but not sanitary. Or they might be sanitary but they're not safe. And so a reading that would allow for, I guess, what you're saying seems like a bigger loophole than perhaps you're presenting it as. I'm trying – because I'm – because you're saying that you have to satisfy all of these five conditions. No, no, no. I think maybe the contrary. What we're saying is that the exclusion applies to any claim alleging the failure to maintain premises that have all those five conditions. That's just what it says. It just says that. But that presupposes. So because, again, exclusions from coverage have to be strictly construed. And that's a reason because there's a contract where you're agreeing to cover something. So in order for you to get out of the coverage, it has to be unambiguous. And so what Judge Abuda was saying is like something could be not sanitary but it's safe or it's habitable, i.e. it doesn't have any structural issues. But maybe it's infested with termites. So all of a sudden it now has a – it's unsanitary. But it doesn't mean it's unsafe. Right. But that exclusion here, it's an exclusion because I think it has to meet all of these conditions, which is really – it's almost like unlivable. Well, so two things, I think. First of all, I think the first part of what you're saying, what you're both saying, proves our point because absolutely it is possible and, indeed, common for a property to be sort of only unsafe but sanitary or only unsanitary but perfectly safe. And what the exclusion is saying is in either of those situations, the exclusion applies because it's alleging a breach of the failure to maintain premises that have any and all of those conditions. So if any of the conditions is missing under the plainest of language of the exclusion, it's – the exclusion is triggered because you've breached that duty. The second point, though, is there is no law anywhere in America that anybody has identified that requires a landlord or that is breached only when the landlord fails to maintain the premises in all five of those ways. So the exclusion, as the insured reads it, does no work whatsoever, which is the sort of second reason that their interpretation is not – Can I – you've reserved some time. That's okay. We'll go on and you'll have your time on rebuttal. Thank you, Your Honors. Mr. Ramachandrapa, whenever you're ready. Thank you, Your Honor. May it please the Court, Naveen Ramachandrapa along with Jeff Shiver, we represent Marie Hughes. With their consent, I'm also arguing on behalf of Appali Venetian Hills, which was the landlord. And let me also say thank you to Judge Lagoa, Stephanie, for having us here in Miami. When I was on the plane from Atlanta here to Miami, surrounded by the Tartan – not Tartan – Army, I was trying to explain to them that I was just as excited to talk about insurance law as they were to see the World Cup. And I'm not going to do the accent, but the guy said to me, you Americans work too much. I said, you know, the heart's going to do what the heart's going to do. So let me start there with one of my favorite topics, insurance law. Can you clarify, and maybe I'm still trying to understand. So are you saying that you satisfied all five of these elements, or are you only – I think the other side is saying that even if one is not satisfied, the exclusion applies. And you're saying that we've satisfied – what are you saying? I'm saying the insurance company is saying for the exclusion to apply any one of those five, that's all that needs to be satisfied. So, for example, they say in this case the property is alleged to be unsafe, but there's no allegations about sanitariness. And they're saying, OK, we just need to hit one of the five. You're saying it has to be all five. All five, exactly. Which makes sense, frankly, because at the end of the day, it's an exclusion. 100 percent. So then you would be – I mean, anything could be unsafe, right? Exactly. And then all of a sudden now it's unsafe, so now you have no coverage, which makes no sense. I agree 100 percent. And I'll give you two illustrations, I think, that help establish that. One is we know you can satisfy all five conditions because, frankly, there's some really horrible properties. Correct, and that's the whole point. The way I read this exclusion is it's basically a situation where it needs to be – the property needs to be condemned. Exactly. OK? Which is that the landlord or the property owner has literally let it fall into disrepair. So it's structurally unsound. It's so healthy. Habitable is like the structurally unsound. Healthy is, you know, you have issues with, you know, vermin, and that could also be sanitary. I mean, that's how I read that exclusion, but let's go to, like, Georgia law where it talks about – there's a case called Nationwide Mutual that says even if some of the plaintiff's allegations ultimately were found not to be covered by the policy, this would still not remove Nationwide's duty to defend in this action. So it seems to me, under Georgia law, it says where the claim is one of potential coverage, doubt as to liability and insurer's duty to defend should be resolved in favor of the insured, which is why the duty to defend is a very expansive concept under Georgia law. That's how – am I correct in that interpretation? You are. In fact, the phrase that's often used is even if groundless. So you can even have completely false allegations. It's still covered because the purpose of the duty to defend is not to say whether you're right or wrong, but this is something that's being alleged and brought under that coverage. Do you agree that a failure to have smoke detectors would qualify as unsafe, or are you – Yes, I – Okay. And the reason I agree with that in part is because any bodily injury is going to make the property unsafe, and that's why when opposing counsel said that the purpose of this exclusion was to only address the warranty of habitability, I kind of paused there for a second and said, well, then why did you say the word safe? Because what scenario would you have a claim, and I encourage opposing counsel to address this on rebuttal, where the person sues for a personal injury and yet it doesn't qualify as unsafe? That's the problem. Once you quote that word unsafe, everything is going to be excluded. I can't think of any bodily injury claim that wouldn't be covered by this exclusion if you only have to meet one of those terms. And the question is not as – and I think you were alluding to this, Judge Grant. What's the best interpretation? It's whether our interpretation is not the best but plausible, and this is from Judge Marcus, and since we're in Miami, I'm very glad to read it. There is a low threshold for establishing ambiguity in insurance policy under Georgia law. That was from the St. Paul case in 2014, and our court of appeals, Judge Mercier, quoted that back and said, yeah, that's an accurate depiction of Georgia law. So the question is, is there any ambiguity? And I think there clearly is because the interpretation that they advance would wipe out all claims, basically. Do you think that there's a different tolerance for ambiguity at the duty to defend versus the duty to indemnify stage? Frankly, no, but I do think that the point is what Judge Lagoa read, which is any of those allegations, if it's even possible to construe the claim in that way, then yes, there is a difference between the duty to defend and the duty to indemnify. I guess the one reason I'm asking is you could see how you could say, well, maybe if it's at least arguable that the policy exclusion doesn't apply, then you have the duty to defend, and then we give the insurance contract a harder look at the indemnification stage. But you could also, I think, say you look at the contract with the same eyes both times, and the question that differs is whether the facts show that that exclusion was met or not. So maybe if there's some argument about whether not having a smoke detector is safe or unsafe, then fine. We save that question for the jury, say, that is it safe, or for the judge, is it safe to have an apartment without a smoke detector? But you're looking from a legal perspective at the contract in the same way in terms of, do you need to have a violation of all five of these things or just one of them? I agree with that. I think the question of ambiguity from the insurance policy is the same on the duty to defend as it is on the duty to indemnify. And importantly, it's not a statutory interpretation type of question. It's what I read from Judge Marcus in the St. Paul fire case, which is, it's a low threshold. Is there any ambiguity? And when we're looking at exclusions particularly, so not the insuring agreement but the exclusions, we construe those narrowly. And it needs to be something that sort of makes sense. And it just doesn't. There's at least some plausibility to it. We're parsing words, so you all have focused a lot on and. But the word condition is in the singular. It's not the plural. So why isn't it reasonable to review that provision as saying safe condition or sanitary condition or healthy condition? Because the sentence or the provision doesn't end with conditions. Those are two things, Your Honor. I think, number one, the singular would help us. It means that the condition needs to be unsafe, unsanitary, unhealthy. That is one singular condition. One property with all those five conditions is one combined. So that's number one. I actually think that helps us. Number two, in the Pulsiver case that was cited by opposing counsel in their briefs and discussed a lot in the briefs, Justice Kagan goes through and say, honestly, that it really doesn't matter. You can make something singular or plural. It really doesn't establish it to the degree that it would make it unambiguous. Certainly, you might say it favors one side or the other, but it's nothing that sort of conclusively. In Pulsiver, though, and I say this as someone who was pretty overjoyed when Justice Kagan's majority opinion came out, adopting the same line of dissent from this court, the grammar wasn't the only thing, right? I think she said, although to your point maybe, she said that it could mean either, and then the surplusage was what kind of got the court over. And that's my point. I think the grammar stuff is a whole big wash. I mean, we spent a lot of ink on it. It was fun. This is what I was trying to explain to my Scottish friend about the way language works. But ultimately, it comes down to the end of the day, does this make sense? Is it possible that our interpretation is correct and theirs is correct as well? I don't think theirs is actually. But let's say as a lover of insurance law, if you were on the other side and you're working for the insurance company and the insurance company wanted to have the exclusion read the way the company is saying it does here, what would you tell them to write in the policy? So first, I would point to the other policies that they have that we cited in our briefs. There are two other cases in the southern district, maybe one in the middle district of Florida, where they do use the word or to separate it. The other thing is you can look at statutes and frequently you break out the conditions in separate hard returns. So instead of putting in that same sentence, you break it out, and you can even repeat the language. Any failure to maintain in a safe condition, semicolon. Any failure to maintain in a sanitary condition, semicolon. And then you put the word or. And not only do we see that in their other policies, but we also see it in the exclusion itself. If you look at part one, you've got this long list of California statutes, which I also had to look up, and I was shocked to see things like regulations on waterless urinals. But they use the word or there, and they break that out. And I think it's clear, and they even say it's clear, that under that exclusion, you don't have to prove all of those are met. You just prove one of them. So the exclusion only applies in your view if it's, let's say there's a, we'll say safe is no fire alarms. Healthy is the water has leaded it. Sanitary is there's a roach infestation. And habitable, I don't know, habitable does seem kind of like an umbrella term, but maybe there's something else for habitable. You think that the exclusion doesn't apply unless that fact pattern is there. I'll give you a fact pattern. I think it's a little easier to understand and kind of mirrors the facts of this case. If there was a huge pileup of garbage, and they didn't remove it, and that started the fire that killed Mr. George Hughes, that would meet it because you would have, it would be unsafe. Sorry, and also they didn't have smoke detectors. Unsafe would be satisfied by the garbage and lack of smoke detectors. Unsanitary and unhealthy would be the garbage buildup. And then the habitability, I think if you look at the law on habitability and tenantability, it really refers to. It's like sustainable for habitation, fit for occupation by the tenant. And if you don't have smoke detectors, that's like a basic. You don't meet it. And same with the garbage. Does the fact that habitability, I think, could probably overlap with a lot of these categories make a difference? I think I would disagree. Habitability does not overlap with the breadth. It's like a Venn diagram. Yeah, it does a little bit. But safety is really the problem in their interpretation. The word safe. Isn't safe structurally sound? No, safe is anything that includes an injury. Because in this case, we're not saying that the apartment was structurally unsound. It was unsafe because it didn't have fire detectors. They agree that that's the case. But isn't that one of the things that could be safety? Which is, I mean, I think normally how people think of it is like, you know, or healthy maybe. It's like your property is C1 to C6. And C1 is good. C6 is bad in terms of whether or not it's structurally safe. Yeah, that's right. And I'll use another example about safety. Judge Grant, if I can take you back to your George Supreme Court days. In the Martin v. Six Flags case, you wrote an opinion affirming liability for Six Flags employees who beat up brutally my client in that case, Joshua Martin. And the statute in that case was Georgia Code 5131 that says that any failure to keep the premises safe is a basis for a claim. Under their interpretation, that claim is excluded because they satisfied the safe. So any injury that occurs, there has to be some allegation that the property is unsafe. And that's why ultimately their interpretation can't work under this statute. What's the unsanitary allegation in your client's complaint? There's not. And that's our point. In this case, there's no claim that the property was unsanitary. And they needed to show that in order for this exclusion to come into play. And there will be properties that I cited an AJC article. I didn't know we were going to be in Florida at the time. I would have picked something from the Miami Herald. But it's just rough out there. I mean, there's some really, really bad properties. And this exclusion protects them against the landlords that completely abandon, as Judge Lagoa said, properties that need to be condemned. And that preserves some meaning to it, whereas I can't find any meaning for the bodily injury coverage. That would be wiped out. And that's similar to what Justice Kagan said in the Pulsever, which is grammar's a wash. And we need to look at what this would actually do. And one of the things it would do, like in that case where it made the subsection A, the four points, basically never exist because you'd always have a three and a two. Here, we have something similar, which is you'll always have the exclusion applied because it's unsafe. Unless there's any other questions, I'll give my two minutes back to you. Thank you. Mr. Hacker, you've reserved three minutes. Thank you, Your Honors. And I just want to touch at sort of a high level on two key points here. First, there's the text and whether or not our interpretation makes sense or whether theirs makes sense. I think the text speaks for itself and completely resolves the case because it says the exclusion applies to any claim in any way related to a failure to maintain premises in a condition, that is, in a safe, sanitary, healthy, tenantable, or habitable condition. Let's assume this is not the case here. But let's assume this is a true story, which is the balconies are unsafe because they forgot to put rebar in the balconies. But the rest of the condos are completely habitable, OK? But clearly, the balconies are unsafe and not habitable. You can't use them. So the way you read this coverage, there would be no coverage. Yes, the exclusion says you have a duty to maintain premises in a condition that's all five things. If you haven't provided safe premises, you've breached the duty. Right, but that makes no sense because then it would eat up coverage. So let's go back. So that's my next point. I think it's clear that the text says what it says. Does it make sense? The answer is yes. First of all, it's incredibly low premiums here. It's supposed to be a narrow set of risks. So that's our starting premise. It's not true. Right, but then when you look, then that's why it has to be strictly construed against the insurer because it makes no sense. I mean, if you have different interpretations, I have an interpretation, and you have an interpretation, then under Georgia law, it has to be strictly construed against your client. Right, but let me try to explain why it does make sense. It makes perfect sense. I'm starting from the premise that everybody agrees. They don't dispute this. This is incredibly low premiums, and so that is a narrow set of risks. Right, but if it's incredibly low premiums, you have other policies where you have a very different policy language, which is clear. So that would be excluded, but the way I read this is not excluded. I understand. So the question is whether our construction makes sense, and it does because contrary to what I think is the premise of Your Honor's question, there's still plenty of coverage under the policy, right? There's coverage for violations of privacy. There's coverage for defamation, and contrary to both what I think the premise of your question is and counsel's argument, there's coverage for bodily injury. There absolutely is coverage for bodily injury when it's caused by the negligence of the landlord's employees, and they commit affirmative acts that are negligent and cause injury. That's not a safety claim. What's an example of that? Because obviously if they tripped them, that would be intentional, right, so not negligent. So what's an example of employee negligence that could leave the apartment being safe but still an available bodily injury claim? So I think tripping is a good example if it's negligent. If you just bump into somebody, an employee is doing regular maintenance or walking around and bumps somebody and they tumble down the stairs, that would be negligence. That's not absolutely contrary. Counsel cannot be more incorrect in arguing that any time there's bodily injury, it's the same thing as saying the premises are unsafe because the safety depends on the premises. A maintenance worker was cleaning a hallway and cleaned a spill and forgot to put a cone that says slippery. So that would be a premises claim because it's about the condition of the premises. That's the key difference. Affirmative acts of negligence, bumping somebody, if a lawnmower or a maintenance vehicle. So you're saying in that situation where there's a spill and a maintenance worker is cleaning it up and goes to go get a cone to put it in and someone slips and falls, it would not be covered? Because it's about the condition of the premises. That's the key difference, right? Failure to maintain safe conditions is about the conditions of the premises, not the underlying acts of a landlord's employee. And that's why it's just wrong to say that any time there's a bodily injury resulting from negligence, it's necessarily a statement, a claim that the premises are unsafe. That's just not correct. A premises claim, this is barring claims that the premises are unsafe, not that you had a bodily injury on the case. And their own case, they cite the Secura case in their brief, and it makes exactly this distinction. And it's a correct distinction. It doesn't apply broadly to all claims that allege bodily injury. It depends on what the nature of the claim is. And the exclusion couldn't be clearer that it's trying to exclude claims that allege that you failed to maintain the premises with respect to all of those duties. If you breach any of those particular elements, then you have failed to maintain premises in their singular, I agree it's singular, singular required condition, which has to include all of those things. If it doesn't include one of them under the plainest of English, then the exclusion is triggered. Thank you. We appreciate your argument. We've got two more cases, and so we'll take a slightly more than 10-minute break. Let's come back at 5 till. And if there's any law students here, I know that there are some. If you want to stay after the conclusion, the court can come and talk to you. Thank you. All rise.